UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIN O'CONNOR,

        Plaintiff,

v.

        Case No. 2:16-cv-357
        JUDGE GEORGE C. SMITH
        Magistrate Judge Deavers

NATIONWIDE CHILDREN'S HOSPITAL,

        Defendant.

**OPINION AND ORDER**

Plaintiff Erin O'Connor brings this action against Defendant Nationwide Children's Hospital alleging four claims: 1) wrongful termination; 2) violation of the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq*. ("FMLA"); 3) a battery claim; and 4) a products liability claim.  This matter is before the Court on Defendant's Motion to Dismiss all of Plaintiff's claims against them (Doc. 3).  The motion is fully briefed and ripe for review.  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## I. BACKGROUND

Defendant Nationwide Children's Hospital ("Nationwide Children's") is a hospital located in Columbus, Ohio, that is subject to the requirements of the Family and Medical Leave Act ("FMLA").  Plaintiff, Erin O'Connor, is a 26 year-old female who was employed as a preoperative technician with Nationwide Children's.  Plaintiff began her employment in January of 2014, and was terminated effective November 16, 2015.  (Doc. 8, Compl. ¶¶ 1–4).  As a

preoperative technician, Plaintiff's duties included: assisting hospital staff with the transport of patients, setting up medical care equipment, maintenance of surgical equipment, and supporting administration of anesthesia to patients. (Doc. 8, Compl. ¶ 1).

On March 19, 2015, Plaintiff was at work at Nationwide Children's and suffered an injury to her shoulder when "a defective freight elevator door" shut on her. (Doc. 8, Compl. ¶ 6). Plaintiff alleges that "the Defendant was aware [the elevator] was causing serious physical injuries to its employees by suddenly slamming against them when entering or leaving the elevator." (*Id.*). Plaintiff placed Nationwide Children's on notice of the cause of her injury in an FRO-1 report dated March 20, 2015. (*Id.* at ¶ 8).

As a full-time employee, Plaintiff was entitled to benefits under the FMLA. She alleges that "Defendant knowing the Plaintiff was required to be given FMLA leave for a serious health condition delayed treatment and contested the Plaintiff's workers' compensation claim for her shoulder injury." (*Id.* at ¶ 9). Plaintiff filed a workers' compensation claim following her shoulder injury and the claim was denied by Defendant on March 30, 215, asserting the claim was "under investigation." (*Id.* at ¶ 10). Plaintiff's injury was later deemed valid as reported on an FRO-1 dated April 2, 2015, stating Plaintiff had a "crush injury, right shoulder." (*Id.* at ¶ 11).

Plaintiff alleges that she was unable to return to work within the next six months because of Defendant's conduct in refusing to pay for or provide medical care to her. On September 9, 2015, Plaintiff was placed on contingent employee status, following the FMLA leave. (Doc. 8, Compl. ¶ 12). Plaintiff asserts that "[c]ontingent status at NCH is the functional equivalent in practice of effecting a constructive discharge from employment on 9 SEP 2015." (*Id.* at ¶ 14). Plaintiff describes that she was placed on this status "immediately before she was to receive corrective surgery allowing her to return to work, surgery that she paid for out of her own

pocket." (*Id*. at ¶ 14). Nationwide Children's terminated "Plaintiff's employment with a letter so advising her and dated 16 NOV 2015." (*Id*. at ¶ 4).

## II. STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.

Under the Federal Rules of Civil Procedure, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes,*

*Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendant Nationwide Children's has moved to dismiss all of Plaintiff's claims against them. The Court will address each of Plaintiff's four claims in turn.

#### A. Wrongful Discharge in Violation of Public Policy

Plaintiff alleges that she was wrongfully terminated as retaliation for complaining to Nationwide Children's about the unsafe workplace, in violation of the public policy of Ohio. Defendant argues that Plaintiff's claim for wrongful termination must be dismissed because she has failed to plead the elements required for a wrongful discharge claim under Ohio law. Specifically, Defendant asserts that Plaintiff failed to identify a clear public policy contained in any constitution, statute, regulation, or common law to serve as the basis for her claim.

In *Greeley v. Miami Valley Maintenance Contractors, Inc.*, the Supreme Court of Ohio created an exception to the common-law employment-at-will doctrine historically followed in Ohio. 49 Ohio St. 3d 228, 235 (1990) ("In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort."). As noted in *Painter v. Graley*, "a finding of 'sufficiently clear public policy' is only the first step in establishing a right to recover for the tort of wrongful discharge in violation of public policy." 70 Ohio St. 3d 377, 384 (1994). The elements of a claim for wrongful discharge in violation of public policy are:

1. That clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

      3.      The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

      4.      The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 171 (2011) (citing Painter, 70 Ohio St. 3d at 384).

Defendant argues that general references to workplace safety and applicable cases like *Kulch v. Structural Fibers*, 78 Ohio St. 3d 134 (1997) and *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St. 3d 77 (2002), are not an articulation of clear public policy sufficient to maintain a claim for wrongful discharge. Plaintiff's Complaint states that:

> An employer in Ohio may not terminate an employee for making complaints about workplace safety and suffering injuries because of it. *Kulch v. Structural Fibers*, 78 Ohio St 3d 134, 152 (1997) (terminating an employee who complains about safety is an affront to the public policy of Ohio); *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St. 3d 77 (2002) (Ohio public policy favoring workplace safety was an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted. Retaliatory discharges for making complaints about workplace safety and seeking to enforce workplace safety under Ohio and federal common law and numerous statutes are affront to Ohio public policy); *Langley v. DaimerlerChrysler Corp.*, 407 F.Supp.2d 897, 909 (ND Ohio 2005) (workplace safety is sufficiently clear public policy to base retaliatory wrongful termination in violation of public policy claim upon); *Jenkins v. Central Transport, Inc.*, 1:09 CV 525 (ND Ohio 1-19-2010) (same).

(Doc. 8, Compl. ¶ 20).

Although the aforementioned allegation is general, Plaintiff does reference more than just the cases and actually describes the applicable law of the cases. Specifically, with respect to the aforementioned cases, terminating an employee that has complained of unsafe work conditions violates public policy. Further, wrongful discharge in violation of public policy is not a claim that requires the plaintiff to meet a heightened pleading standard. Therefore, Plaintiff's

allegations are sufficient at this stage of the proceedings to establish the clarity element of a claim for wrongful discharge in violation of public policy.

Defendant also argues that Plaintiff has failed to allege any facts demonstrating that discharging employees under circumstances like those involved in her own discharge would jeopardize that clear public policy (the jeopardy element).  Defendant asserts that wrongful discharge claims based on reports of workplace injuries do not meet the jeopardy element because Ohio Revised Code § 4123.90 "provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act."  *See McDonald v. Mt. Perry Foods, Inc.*, Case No. 2:09-cv-779, 2011 U.S. Dist. LEXIS 84598, *52–53 (S.D. Ohio Aug. 2, 2011) (Marbley, J.) (quoting *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St. 3d 351, 2007-Ohio-6751, 879 N.E.2d 201 (2007)).  The Court agrees that courts have consistently held that in light of *Bickers,* public policy claims based on termination as retaliation for filing a workers' compensation claim are barred.

Subsequent to *Bickers*, the Supreme Court of Ohio held that a claim for wrongful discharge in violation of public policy may lie "when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."  *Sutton v. Tomco Machining Inc.*, 129 Ohio St. 3d 153, 163, 2011-Ohio-2723, 950 N.E.2d 938 (2001).  However, this exception does not apply here as Plaintiff filed a workers' compensation claim.

The Sixth Circuit has held that the jeopardy element is only met when an employee's complaint makes it "clear to [the] employer that [the employee] is invoking a governmental policy as the basis for [the] complaint, not just [the employee's] own self-interest."  *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 659 (6th Cir. 2005).  There are no allegations

in Plaintiff's Complaint regarding a government policy. Plaintiff's complaints that allegedly led to her discharge were that the elevator injured her. Accordingly, Plaintiff cannot satisfy the jeopardy element and therefore her claim for wrongful discharge in violation of public policy must be dismissed.

**B.     FMLA Interference Claim**

Plaintiff alleges that Defendant violated her FMLA rights by placing her on FMLA leave involuntarily. She described in her response that when she was injured:

> she was put on FMLA leave involuntarily (Complaint Par. 23), she was able to perform work although on light duty, was given light duty, it was then inexplicably taken from her (Par. 12); and her medical treatment was then delayed after the Defendant contested responsibility for her injury (Par. 9, 13, 14) knowing that if her surgery was performed late into the FMLA time off period, the Defendant could and did use a neutral excuse her FMLA leave time expired to fire her so as to create a pretext, after the Plaintiff was unable to return to work in 6 months which event could have been avoided had the Defendant not in bad faith contested the cause of her injury. (Par. 12, 13, 14, 24, 25).

(Doc. 5, Pl.'s Resp. in Opp. at 12).

Defendant argues that Plaintiff has failed to plead that she was forced to take FMLA leave. Instead, Plaintiff states that "Defendant placed [her] on FMLA leave (29 USC 2601 *et seq*) given she met the requirements of FMLA Section 102 (a)(1)(D) to wit: 'because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" (Doc. 8, Compl. ¶ 22). She also asserts that "Plaintiff was required to be given FMLA leave for a serious health condition." (*Id*. at ¶ 9).

The FMLA entitles an "eligible employee" to up to twelve weeks of leave per year if he or she has a "serious health condition" that prevents the employee from performing the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). In order to maintain an interference claim under the FMLA, Plaintiff must establish

that:  (1) she was an eligible employee under the FMLA; (2) that Nationwide Children's is an employer as defined under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice of her intention to take leave; and (5) that Nationwide Children's denied Plaintiff the FMLA benefits to which she was entitled.  *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  In assessing an interference claim, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after taking a medical leave."  *Id.* at 506 (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

Plaintiff's claim is for involuntary leave, which is a type of FMLA interference claim.  An involuntary-leave claim arises under 29 U.S.C. § 2615(a)(1) when: "an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working."  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007).  However, "the employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past."  *Id.*

The allegations in Plaintiff's Complaint are very sparse with respect to this claim.  She makes a conclusory statement that she was "placed on FMLA involuntarily" and that she "was not required to accept FMLA leave benefits from NCH and they were bestowed on her to effect a wrongful termination."  (Doc. 8, Compl. ¶¶ 23, 25).  Further, Plaintiff does not specifically state that she requested FMLA leave at a later date to make this claim ripe, but suggests that she may have.  However, at this stage in the proceedings, Plaintiff has sufficiently alleged that she was placed on FMLA leave involuntarily in violation of her rights under the FMLA.  Accordingly, Defendant's Motion to Dismiss Plaintiff's FMLA claim is denied.

C.     **Battery Claim / Employer Intentional Tort**

Plaintiff alleges that she was subject to battery by her employer, Nationwide Children's, when "she was struck by the elevator door." (Doc. 8, Compl. ¶ 27). Defendant argues that Plaintiff cannot maintain a claim for battery because she has not alleged an affirmative act by Nationwide Children's and her claim falls exclusively within the scope of her workers' compensation claim. The Court agrees with Defendant that Plaintiff alleges that Nationwide Children's failed to maintain the elevator, which constitutes an omission, not an affirmative act. Further, her injury sustained at work should be pursued through workers' compensation.

Plaintiff also alleges that Nationwide Children's "conduct amounts to an employer intentional tort compensable outside of the workers' compensation system." (*Id.*). Defendant argues that Plaintiff has failed to plead such a claim, and even if she sought leave to amend her complaint to bring such a claim, it would be futile.

The Supreme Court of Ohio held that

> A claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that the injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded.

*Mitchell v. Lawson Milk Co.*, 40 Ohio St. 3d 190, 192 532 N.E.2d 753 (1988).

An employee asserting an employer intentional tort claim is subject to a "heightened standard of review" under a Rule 12(b)(6) motion to dismiss "due to the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice." *Byrd v. Faber*, 57 Ohio St. 3d 56, 60, 565 N.E.2d 584 (1991). Further, although a plaintiff may use the operative "buzz words" in the complaint, this is

not sufficient to survive a motion to dismiss. Rather, a plaintiff must "plead the facts with sufficient particularity to show that the employer intended the injury and that the employer knew the injury was substantially certain to occur." *Bullis v. Sun Healthcare Group*, 2012-Ohio-2112, ¶ 8, No. 2011-CA-21 (Ohio Ct. App., Miami Cty. May 11, 2012) (holding that the employee's allegations that his employer had knowledge of the parking lot hole that caused his injuries, but failed to correct or warn other employees, did not meet the heightened pleading standard for an employer intentional tort claim).

Like the Plaintiff in *Bullis*, Plaintiff has alleged that Nationwide Children's knew of a defective condition on its property, the elevator, and did not repair it. Plaintiff alleged that she "was injured by a defective freight elevator door that the Defendant was aware was causing serious physical injuries to its employees" and that Nationwide Children's "intentionally failed to properly maintain the elevator equipment in a safe condition knowing it had physically injured a number of employees including the Plaintiff and could not be operated reliably for safety and acted with deliberate intent to cause an injury to the Plaintiff." (Doc. 8, Compl. ¶ 6–7). However, Plaintiff's use of buzz words like "intentional" and "deliberate intent" are not sufficient to plead with particularity that Nationwide Children's intended the injury or knew the injury was substantially certain to occur. Accordingly, even if Plaintiff had pled an intentional tort claim under Ohio Revised Code § 2745.01, it would still fail because it is subject to a heightened standard of review and Plaintiff has failed to plead the facts with sufficient particularity to establish such a claim.

**D.     Products Liability Claim**

Plaintiff brings a products liability claim under the theory that Nationwide Children's "assumed a dual capacity as an employer and supplier of a product to the [Plaintiff]." (Doc. 8,

-10-

Compl. ¶ 29).  Defendant argues that Nationwide Children's cannot be characterized as both an employer and supplier under Ohio law and that Plaintiff's claim is barred by the exclusivity of the workers' compensation remedy.

The dual capacity doctrine "is a narrow exception to the general rule of employer statutory immunity in negligence suits brought by employees." *Stolz v. J & B Steel Erectors*, 76 F.Supp. 3d 696, 703 (S.D. Ohio 2014) (Black, J.) (concluding that the dual capacity doctrine was inapplicable because the plaintiff's injury was a direct result of his work and not merely incidental).  For the dual capacity doctrine to apply, "there must be an allegation and showing that the employer occupied two independent and unrelated relationships with the employee, that at the time of these roles of the employer there were occasioned two different obligations to this employee, and that the employer had during such time assumed a role other than that of employer." *Bakonyi v. Ralston Purina Co.*, 17 Ohio St. 3d 154, 157, 478 N.E.2d 241 (1985) (holding that the dual capacity doctrine did not apply and plaintiff's claim was barred by Ohio's Workers' Compensation Act); *see also Schump v. Firestone Tire & Rubber Co.*, 44 Ohio St. 3d 148, 152, 541 N.E.2d 1040 (1989) (the employer must "step outside the boundaries of the employer-employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship.").  The dual capacity doctrine does not apply "where the injuries suffered were incurred during the course of employment as a result of the employer's alleged failure to maintain a safe work place."  *Stolz,* 76 F.Supp. 3d at 703.

Plaintiff relies on *Guy v. Arthur H. Thomas Co.*, 55 Ohio St. 2d 183, 378 N.E.2d 488 (1978), in support of her claim that Nationwide Children's is both her employer and a supplier of a faulty product.  In *Guy*, the Supreme Court of Ohio held that a hospital employee could maintain a medical malpractice action against the hospital notwithstanding the immunity from

civil liability provided by the workers' compensation system. The hospital had provided medical treatment to the employee, therefore assuming another role that was unrelated to its role as an employer. *Id.* at syllabus.

Both parties reference *Rivers v. Otis Elevator*, 2013-Ohio-3917, 996 N.E.2d 1039 (Ohio Ct. App., 8th Dist. 2013), that involved similar facts to the case at bar and the court ultimately rejected the application of the dual capacity doctrine. The plaintiff in *Rivers* worked as a housekeeper at a hospital and was injured after tripping out of an elevator while at work. The court held that plaintiff was at the hospital "solely for purposes of work, and she was still 'on the clock' at the time of the accident." *Id.* at ¶ 17. The court stated that hospital employees use the elevator all the time as part of their work. And further concluded that:

> There was no evidence that [the hospital] assumed any other persona besides that of employer with respect to [plaintiff], nor do appellants identify any other role [the hospital] played other than that of a nondescript 'non-employer.' Unlike *Guy*, [the hospital] did not assume the traditional role of hospital to treat [plaintiff] as a patient nor was [plaintiff] a visitor of the hospital. The undisputed evidence demonstrates that [plaintiff's] injuries resulted from her 'employment use' of the elevator, and her injuries are 'predominantly work-related.' Therefore, the dual-capacity doctrine was inapplicable.

*Id*.

The Court finds Plaintiff has failed to plead sufficient facts to maintain a claim based on the dual capacity doctrine. Plaintiff has alleged that she suffered the injury while at work, during the course of her employment. She was using the elevator as part of her employment and therefore work related. Plaintiff cannot establish that she was at Nationwide Children's for any purpose other than work. She was not both an employee and a patient like in *Guy*. Nor has she sufficiently plead sufficient facts, aside from mere conclusory statements, to establish how

Nationwide Children's had any other duty to her aside from that of employer-employee. Accordingly, Plaintiff's products liability claim must be dismissed.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

The parties shall contact Magistrate Judge Deavers' chambers to establish a pretrial schedule and to schedule a settlement conference.

The Clerk shall remove Document 3 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**